HATHAWAY PARKER INC.
MARK HATHAWAY, Esq. (SBN 151332)
mark@hathawayparker.com
JENNA E. PARKER, Esq.  (SBN 303560)
jenna@hathawayparker.com
515 S. Flower Street, Floor 18
Los Angeles, California 90071
Telephone: (213) 529-9000

*Attorneys for John Doe*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; and DOES 1 to 20 inclusive,<br><br>       Defendants. | Case No.: 2:25-cv006691-JAK-PVC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CALIFORNIA STATE UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>Hearing Date: October 20, 2025<br>Time:       8:30 a.m.<br>Judge:      Hon. John A. Kronstadt<br>Location:   350 W. 1st Steet, 6th Floor<br>          Courtroom 10C<br>          Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................... 9

II.   STATEMENT OF FACTS ................................................. 10

    A.    FACTS UNDERLYING CAL POLY'S INVESTIGATION. ...................... 10

    B.    FACTS RELATING TO PLAINTIFF'S ALLEGATIONS. ........................ 11

III.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS. ....................... 14

IV.   LEGAL ARGUMENT ........................................................ 15

    A.    *COLORADO RIVER* AND *YOUNGER* ABSTENTION DO NOT BAR
        PLAINTIFF'S COMPLAINT. ................................................. 15

        1.    *Colorado River* Abstention Does Not Apply to the Instant Facts..... 16

            a)    Legal Standard Governing Colorado River Abstention. ........ 16

            b)    Colorado River Abstention Does Not Apply. ......................... 17

            c)    Colorado River Factors Weigh Against a Stay or
               Dismissal.................................................................... 18

               (1)    Avoiding Piecemeal Litigation.................................... 18

               (2)    The Order of Jurisdiction. ........................................... 20

               (3)    Federal Rights and State Court Resolution of Issues... 21

               (4)    Avoidance of Forum Shopping. .................................. 21

        2.    *Younger* Abstention Does Not Apply Here. .................................... 22

            a)    Legal Standard Governing Younger Abstention..................... 23

            b)    *Younger* Abstention Is Inapplicable Because Plaintiff
               Does Not Seek to Enjoin State Court Action. ........................ 23

            c)    Defendant Cannot Satisfy Younger Criteria. .......................... 25

    B.    PLAINTIFF ALLEGES SUFFICIENTLY HIS CAUSE OF ACTION
        FOR VIOLATION OF TITLE IX. ................................................. 26

    C.    PLAINTIFF ADEQUATELY PLEADS STATE LAW CLAIMS. .............. 29

1          1.      Plaintiff Sufficiently Pleads Claims for Breach of Contract and
2                  Promissory Estoppel. .........................................................................29

3          2.      Plaintiff Sufficiently Pleads Claims for Negligence and IIED. .........30

4          3.      Cal. Civ. Code, § 47 Does Not Bar Plaintiff's State Law Claims ....32

5    V.    CONCLUSION...............................................................................................33

6    CERTIFICATE OF COMPLIANCE ...............................................................34

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Federal Cases

*Alabama Pub. Serv. Comm'n v. Southern R. Co.*,
341 U.S. 341 (1951)...........................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................15

*Baffert v. Cal. Horse Racing Bd.*,
332 F.3d 613, 615 (9th Cir. 2003) ...................................................................25

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ...........................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................15

*Blanco v. Cnty. of Kings (Blanco)*,
142 F.Supp.3d 986 (E.D. Cal. 2015) ...............................................................31

*Boermeester v. Univ. of S. Cal.*,
No. CV 19-2137 FMO, 2025 U.S. Dist. LEXIS 45205 (C.D. Cal. Mar.
10, 2025)............................................................................................................22

*Choudhry v. Regents of the Univ. of Cal.*,
Case No. 16-cv-05281-RS, 2016 U.S. Dist. LEXIS 155745 (N.D. Cal.
Nov. 9, 2016) .............................................................................................25, 26

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)....................................................................................*passim*

*DeJesus v. County of Mariposa*,
No. 1:21-cv-00520-DAD-BAM (E.D. Cal. Feb. 9, 2022).............................25

*Doe v. Bd. of Trs. of Whitman Coll.*,
670 F. Supp. 3d 1155 (E.D. Wash. Apr. 25, 2023) ........................................28

*Doe v. Regents of the Univ. of Cal.*,
23 F.4th 930 (9th Cir. 2022) ............................................................................29

*Doe v. Univ. of Ky.*,
  860 F.3d 365 (6th Cir. 2017) ........................................................................ 25

*Francis v. Univ. of Balt.*,
  No. RDB-24-2295, 2025 U.S. Dist. LEXIS 135027 (D.C. Mary. Jul. 16, 2025) ........................................................................................................... 29

*Herrera v. City of Palmdale*,
  918 F.3d 1037 (9th Cir. 2019) ................................................................. 23, 24

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ............................................................................... 15, 28

*Kenneally v. Lungren*,
  967 F.2d 329 (9th Cir. 1992) ....................................................................... 25

*Khademi v. S. Orange Cty. Cmty. Coll. Dist.*,
  194 F. Supp. 2d 1011 (C.D. Cal. 2002) ....................................................... 18

*Mendocino Ry. v. Ainsworth*,
  113 F.4th 1181 (2024) ........................................................................... 16, 17

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................. 15, 28

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ..................................................................................... 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .......................................................................................... 17

*Newton v. Nat'l Broad. Co.*,
  930 F.2d 662 (9th Cir. 1990) ....................................................................... 33

*R.R. St. & Co. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ....................................................................... 21

*Roshan v. McCauley*,
  130 F.4th 780 (9th Cir. 2025) ...................................................................... 25

*Sanchez v. Ariz. Bd. of Regents*,
  No. CV-15-01591-PHX-JAT, 2015 U.S. Dist. LEXIS 152729 (D. Ariz. Nov. 10, 2015) ............................................................................................ 25

*Seneca Ins. Co. v. Strange Land, Inc.,*
   862 F.3d 835 (9th Cir. 2017) ...............................................................*passim*

*Sprint Communs., Inc. v. Jacobs,*
   571 U.S. 69 (2013)................................................................................25

*Stockton v. Brown,*
   No. 24-3777, 2025 U.S. App. LEXIS 24035 (9th Cir. Sep. 17, 2025).......25

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ..............................................................15

*Travelers Indem. Co. v. Madonna,*
   914 F.2d 1364 (9th Cir. 1990) ............................................................21

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ..............................................................28

*Wind River Res., LLC v. Guenther,*
   2010 U.S. Dist. LEXIS 19104 (D. Ariz. Mar. 3, 2010)............................22

*Yelp Inc. v. Paxton,*
   137 F.4th 944 (9th Cir. 2025) .............................................................23

*Younger v. Harris,*
   401 U.S. 37 (1971)...........................................................................*passim*

**State Cases**

*Andersen v. Regents of University of California,*
   22 Cal.App.3d 763 (1972) ...................................................................30

*Fowler v. Howell,*
   42 Cal.App.4th 1746 (1996) ................................................................32

*Hansen v. Dep't of Corr. & Rehab.,*
   171 Cal. App. 4th 1537 (Cal. Ct. App. 2008)........................................31

*Jones v. Jones,*
   183 Cal. App. 2d 468 (1960) ..............................................................33

*Kashmiri v. Regents of University of California,*
   156 Cal.App.4th 809 (2007) ...............................................................30

*Pomona Valley Hosp. Med. Ctr. v. Superior Court*,
   55 Cal. App. 4th 93 (1997) ................................................................20

*Shen v. Miller*,
   212 Cal.App.4th 48 (2012) ...............................................................33

*Western Surgical Supply Co. v. Affleck*,
   110 Cal.App.2d 388 (1952) ...............................................................26

**Federal Statutes**

20 U.S.C. § 1681 ....................................................................................9

42 U.S.C. § 1983 ..................................................................................25

Title IX ..........................................................................................*passim*

**State Statutes**

Cal. Civ. Code
   § 47........................................................................................32, 33
   § 47, subd. (b)(2).........................................................................32

Cal. Code Civ. Proc.
   § 1085........................................................................................26
   § 1085, subd. (a)........................................................................26
   § 1094.5..........................................................................12, 17, 26
   § 1094.5, subd. (b) ...............................................................19, 21
   § 1094.5, subd. (f) ..........................................................19, 24, 26

Cal. Evid. Code, § 250 ...................................................................32, 33

Cal. Gov. Code
   § 815......................................................................................30, 31
   § 815.2, subd. (b) ......................................................................30
   § 821.6........................................................................................31

Government Claims Act...................................................................31

**Court Rules**

Fed. R. Civ. P. 8, subd. (a)(2) ...........................................................14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

7

Fed. R. Civ. P. 12(b)(6)..................................................................................15, 29

Fed. R. Civ. P. 12, subd. (b)(6) ...................................................................9, 14

Federal Rules of Civil Procedure Rule 8 .........................................................14

## I.    INTRODUCTION

The instant matter concerns Plaintiff John Doe ("Plaintiff" or "Doe"), a male student from California Polytechnic State University, San Luis Obispo ("Cal Poly") who was wrongfully subjected to gender discrimination in the administration of a Title IX disciplinary proceeding.  This illegal and discriminatory conduct ultimately lead to Plaintiff's erroneous expulsion from Cal Poly.  As a result of Cal Poly's conduct, Plaintiff filed a lawsuit against Defendant The Board of Trustees of the California State University ("Defendant"), asserting causes of action for (1) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"); (2) breach of contract; (3) promissory estoppel; (4) negligence; and (5) intentional infliction of emotional distress, and seeking relief including damages and a temporary restraining order and permanent injunction.  *See generally* Complaint, ECF No. 1.

Defendant moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12, subd. (b)(6).  In its Motion to Dismiss ("Motion"), Defendant argues that the principles of abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and *Younger v. Harris*, 401 U.S. 37 (1971) preclude the Court from exercising jurisdiction over this case.  Defendant, however, fails to establish that the factors warranting *Colorado River* abstention weigh in favor of abstention and fails to satisfy all requirements necessary for *Younger* abstention.  Defendant also argues that Plaintiff fails to plead sufficiently his claims for gender discrimination and state law claims.  In the process, Defendant ignores the plain language in Plaintiff's complaint and seeks to impose a higher pleading burden on Plaintiff than the law requires, in effect seeking to require Plaintiff to present a *prima facie* case on his claims prior to any discovery in this matter, which the law does not require. Lastly, Defendant argues that certain privileges and immunities warrant dismissal of Plaintiff's complaint but ignores that exceptions to the privileges and immunities render them inapplicable.  Plaintiff has met his burden under the law, which is to provide a plain statement of the claim with facts showing he is entitled to relief.  As such, Defendants' Motion must be denied.

## II.    STATEMENT OF FACTS

### A.    FACTS UNDERLYING CAL POLY'S INVESTIGATION.

In Spring 2023, Plaintiff John Doe was a senior at Cal Poly studying Biomedical Engineering and expecting to graduate in June 2023 with a 3.85 GPA.  ECF No. 1 at ¶ 25. At that time, Plaintiff and Jane Roe had been friends for approximately 15 to 18 months and worked together on campus.  *Id*. at ¶ 26.

On March 18, 2023, Jane Roe, who had recently broken up with her boyfriend, went to Plaintiff's off-campus residence to celebrate St. Patrick's Day with Plaintiff and his roommates, who were also Jane Roe's friends.  *Id*. at ¶ 27.  Plaintiff and Jane Roe flirted throughout the night, and around 9:00 p.m., Jane Roe followed Plaintiff into the laundry room, where they consensually kissed.  *Id*. at ¶ 28.  They continued socializing and kissed again in the dining room in front of their friends.  *Id*.

While several people were still in Plaintiff's house, Plaintiff and Jane Roe went into Plaintiff's bedroom where they continued kissing, mutually removed each other's clothing, and had sex with a condom.  *Id*. at ¶ 30.  Shortly after Plaintiff and Jane Roe began having sex, however, Jane Roe made a face, said, "Stop, stop, stop" and "this hurts," and placed her hands on Plaintiff's abdomen.  *Id*.  Plaintiff immediately stopped all sexual activity.  *Id*.  Plaintiff subsequently gave Jane Roe clothes to sleep in, and Jane Roe slept in Plaintiff's bed with Plaintiff that night.  *Id*. at ¶ 31.

Plaintiff fell asleep and did not wake up until the next morning.  When he woke up, his pajama bottoms were on, showing no indication of additional sex.  *Id*. at ¶ 32.  Jane Roe woke up in Plaintiff's bed, and Plaintiff walked her out, and they said goodbye.  *Id*. at ¶ 33.  Jane Roe's friend picked her up and Jane Roe told her friend that she had sex with Plaintiff, but made no claims about the sex being nonconsensual.  *Id*. at ¶ 34.

Later, Plaintiff texted Jane Roe, and they met in person at a picnic table outside Jane Roe's house.  *Id*. at ¶ 35.  Plaintiff apologized for his part in the consensual sexual activity and for crossing a friendship boundary.  *Id*. at ¶ 36.  Jane Roe acknowledged that it was a "50/50 fuckup" and that she could have left at any time.  *Id*.  She also made Plaintiff

promise not to tell anyone because her ex-boyfriend disliked Plaintiff.  *Id.*

Jane Roe sent Plaintiff a lengthy text message around 8:30 p.m. that night in which she claimed that she had pretended to be asleep, that Plaintiff continued to have sex with her after she said "stop" and "this hurts," and that Plaintiff had choked her—none of which had happened.  *Id.* at ¶ 37.  Confused by the text messages he received from Jane Roe, Plaintiff apologized to avoid further conflict and preserve their friendship, believing Jane Roe felt guilty for hooking up with a friend of her ex-boyfriend.  *Id.*

In April 2023, Jane Roe commented on Plaintiff's social media story and confirmed with him that they were still friends.  Jane Roe and Plaintiff also had a 20-minute phone call about their plans to attend a music festival.  *Id.* at ¶ 38.

## B.    FACTS RELATING TO PLAINTIFF'S ALLEGATIONS.

Notwithstanding Plaintiff and Jane Roe's interaction in April 2023, Plaintiff received from Kaitlyn Blakey, Associate Director of the Civil Rights & Compliance Office ("CRCO"), a No Contact Order on May 30, 2023, instructing him not to have contact with Jane Roe.  *Id.* at ¶ 39.  Plaintiff was informed of Jane Roe's interest in an Informal Resolution Agreement ("IRA") and received the proposed terms, which included a hold on Plaintiff's degree for several months.  *Id.*  On June 5, 2023, however, Jane Roe withdrew from the IRA process and opted for a formal investigation.[1]  *Id.* at ¶ 40.  The CRCO issued a Notice of Allegations and Notice of Investigation (Track 2).  *Id.*

On August 7, 2023, the CRCO issued its Preliminary Investigation Report.  *Id.* at ¶ 54.  On August 21, 2023, Plaintiff submitted a response to the Preliminary Investigation Report, outlining his version of the events of March 18-19, 2023.  *Id.* at ¶ 55.  Plaintiff

---

[1] Jane Roe alleged that on March 18-19, 2023, after consensually kissing Plaintiff in his bedroom, and initially agreeing to engage in sexual activity, she withdrew her consent. ECF No. 1 at ¶¶ 41-42.  Jane Roe claims that Plaintiff continued to engage in sexual activity with her despite her withdrawn consent, and continued to do so throughout the night while she pretended to be asleep.  *Id.* at ¶¶ 43-45.  Plaintiff vehemently denied, and continues to deny, Jane Roe's allegations.  *Id.* at ¶ 46.

also submitted evidence and questions for the investigator to ask Jane Roe and witnesses. *Id*. On October 5, 2023, the CRCO issued a Second Preliminary Investigation Report ("Preliminary Report 2"). *Id*. at ¶ 56. On October 19, 2023, Plaintiff submitted his response to the Second Preliminary Investigation Report. *Id*. at ¶ 57. On November 9, 2023, The CRCO issued its Final Investigation Report. *Id*. at ¶ 76.

On January 30 and 31, 2024, Cal Poly conducted a hearing to adjudicate whether Plaintiff engaged in sexual misconduct. *Id*. at ¶ 80. Adrienne Publicover, Esq., served as the outside Hearing Officer. *Id*. On February 21, 2024, the Hearing Officer issued a Hearing Decision Report, finding Jane Roe "very credible" and Plaintiff "less credible" and that Jane Roe did not want to engage in sexual activity that night. *Id*. at ¶¶ 80, 83.

On March 1, 2024, Plaintiff submitted to the Hearing Officer a statement addressing the sanctions, explaining his career goals and reasons why an expulsion would not be appropriate. *Id*. at ¶ 87. Plaintiff also explained that an expulsion sanction would end his dream of going to graduate school, getting his Ph.D., and performing cancer research, and would leave him with more than $25,000 in outstanding student loans. *Id*. at ¶ 88. Notwithstanding, on March 5, 2024, the Hearing Officer recommended expulsion as the appropriate sanction. *Id*. at ¶ 89. On March 11, 2024, Vice President for Student Affairs, Keith B. Humphrey, issued the Final Decision Letter formally accepting the expulsion recommendation, reiterating the Hearing Officer's rationale for expulsion. *Id*. at ¶ 94.

On March 22, 2024, Plaintiff submitted his appeal to the CSU Chancellor's Office on the limited grounds available under CSU's Nondiscrimination Policy, but the decision was upheld on June 4, 2024. *Id*. at ¶¶ 95-96.

On November 26, 2024, Plaintiff filed a Petition for Writ of Mandamus in the matter of *John Doe v. Board Of Trustees Of The California State University*, LASC Case No. 24STCP03862, alleging that CSU had failed to grant Plaintiff a fair hearing required by Code Civ. Proc., § 1094.5, committed a prejudicial abuse of discretion, failed to proceed in the manner required by law, issued a decision that is not supported by the findings, and made findings that are not supported by the evidence. *Id*. at ¶ 98.

On November 26, 2024, Plaintiff also filed his CSU Claim Form, alleging that Cal Poly's wrongful and discriminatory Title IX investigation and adjudication resulted in an erroneous finding that Plaintiff committed sexual assault and Plaintiff's expulsion from Cal Poly after he completed all coursework needed to graduate. *Id*. at ¶ 100. Plaintiff's government claim was rejected by letter dated January 22, 2025. *Id*. at ¶ 101.

Pertinently, during Cal Poly's proceedings, it engaged in conduct constituting gender discrimination in violation of Title IX and/or CSU policies, including:

Utilizing Kaitlyn Blakey to serve as the investigator, notwithstanding her record of being named as a defendant in multiple lawsuits alleging unfairness and discrimination against accused male students. *Id*. at ¶ 47.

Failing to confer Plaintiff's earned undergraduate degree indefinitely during the pendency of the Title IX proceedings and prior to completion of the grievance process. In contrast, Cal Poly conferred Jane Roe's undergraduate degree and allowed her to apply, become accepted, and start a post-graduate program during the investigative process, despite the pending investigation. *Id*. at ¶ 49.

Continuing with its investigation despite Jane Roe having graduated from Cal Poly in June 2023, leaving Cal Poly with no meaningful interest in pursuing disciplinary action under its Title IX process. *Id*. at ¶ 53.

Repeatedly embellishing and mischaracterizing Plaintiff's and Roe's own statements and characterizing disputed facts as undisputed material factual issues in Preliminary Report 2. *Id*. at ¶¶ 58, 66, 67.

Improperly referencing Plaintiff's prior sexual history in Preliminary Report 2, despite his sexual history being irrelevant to Jane Roe's complaint, prejudicial to Plaintiff, and contrary to its own policy. *Id*. at ¶ 59. Cal Poly also prevented John Doe from asking questions about Jane Roe's prior sexual history, after allowing evidence of John Doe's prior sexual history. *Id*. at ¶ 60.

Failing to ask Jane Roe relevant questions and request consent from her to release physical evidence and medical records. *Id*. at ¶¶ 61-64.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  Including irrelevant and unrelated claims and refusing to gather exculpatory

2  evidence that would allow Plaintiff to dispute those claims. *Id*. at ¶ 65.

3  Refusing to investigate nonconsensual sexual activity by Jane Roe against John

4  Doe. *Id*. at ¶¶ 68-71.

5  Failing to notify Plaintiff, a male complainant, of his rights and reporting options

6  or to offer Plaintiff, any supportive measures, such as counseling and mental health

7  services or confidential advocacy and support services through Cal Poly's campus CARE

8  office, after he made his Title IX report, despite making such measure available to Jane

9  Roe. *Id*. at ¶¶ 73, 75.

10  Failing to take steps to restore or preserve equal access to education for Plaintiff,

11  despite doing so for Jane Roe. *Id*. at ¶ 74.

12  Shifting on to Plaintiff the burden to prove his and his witnesses' credibility and

13  disprove Jane Roe's allegations, or to affirmatively prove that Jane Roe had a motive to

14  fabricate allegations against Plaintiff. *Id*. at ¶¶ 78, 81-85.

15  Asking leading questions of Jane Roe during the hearing, and, in the process,

16  effectively telling her what to say, while repeatedly asking Plaintiff misleading,

17  argumentative, and badgering questions in a disdainful tone. *Id*. at ¶ 79.

18  Excusing material inconsistencies in Jane Roe's statements. *Id*. at ¶ 80.

19  Refusing to consider Plaintiff's written closing statement after the hearing and

20  faulting Plaintiff for submitting a written closing statement, even though there are no rules

21  prohibiting either party from submitting a written post-hearing closing statement. *Id*. at ¶

22  86.

23  As a result of Cal Poly's discriminatory conduct, Plaintiff filed the complaint in the

24  instant case on July 22, 2025. *See generally* ECF No. 1.

25  **III.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS.**

26  Rule 8 of the Federal Rules of Civil Procedure mandates only that a pleading

27  contain a "short and plain statement of the claim showing that the pleader is entitled to

28  relief." Fed. R. Civ. P. 8, subd. (a)(2).  In considering a Fed. R. Civ. P. 12, subd. (b)(6)

motion to dismiss, the Court must apply a rigorous test and should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In applying this test, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the non-moving party.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Generally, the Court may look only to the pleadings and the attachments thereto.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Dismissal of a claim is only appropriate if the plaintiff fails to set forth sufficient factual allegations that would, if true, entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While conclusory allegations are not sufficient to avoid dismissal, the issue "is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In short, a complaint may not be dismissed if it "contain[s] sufficient factual matter ... to 'state a claim to relief that is plausible on its face' that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.    LEGAL ARGUMENT

### A.    *COLORADO RIVER* AND *YOUNGER* ABSTENTION DO NOT BAR PLAINTIFF'S COMPLAINT.

Defendant argues that principles of abstention warrant dismissing Plaintiff's claims for equitable relief and staying his damages claims. *See* Motion at 7:13-12:20.  According to Defendant, the principles of abstention, as articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River*") and *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*"), require the Court to dismiss or stay Plaintiff's

claims.  Defendant's reliance on *Colorado River* and *Younger* is misplaced, and, as a result, the Court should deny Defendant's Motion.

### 1.    *Colorado River* Abstention Does Not Apply to the Instant Facts.

#### a)    *Legal Standard Governing Colorado River Abstention.*

Under the principle of abstention, a "District Court may decline to exercise or postpone the exercise of its discretion." *Colorado River*, 424 U.S. at 813.  "The doctrine of abstention," however, "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id*.  "Abstention from the exercise of federal jurisdiction *is the exception, not the rule*." *Id*. (emphasis added); *see also Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1188 (2024) ("*Mendocino*") ("The underlying principle guiding this review is a strong presumption against federal abstention").  "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813 (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)).  "[It] was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361 (1951).

Courts consider the following eight factors in a balancing test to determine if a *Colorado River* stay or dismissal is appropriate:

(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *Mendocino*, 113 F.4th at 1188 (quoting *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011)). These factors are to be applied in "a pragmatic,

flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 21 (1983). "'Any doubt as to whether a factor exists should be resolved against a stay' or dismissal." *Mendocino*, 113 F.4th at 1188 (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)). As explained below, consideration of these factors weighs against a stay or dismissal.

### b) *Colorado River Abstention Does Not Apply.*

As a threshold matter, abstention under *Colorado River* is appropriate only in rare cases where a state court's resolution of pertinent state law could moot or significantly alter a federal constitutional issue. *Colorado River*, 424 U.S. at 814. That is not the case here. Plaintiff's federal Title IX claim centers on allegations of sex discrimination—specifically, that gender bias influenced the disciplinary outcome. In contrast, the state court action is a writ of mandate under Cal. Code Civ. Proc., § 1094.5, which addresses procedural fairness and evidentiary sufficiency under state law. These are distinct inquiries. Even if the state court finds Cal Poly's hearing was unfair, or the findings were unsupported by substantial evidence, that determination does not resolve whether unlawful gender discrimination motivated Cal Poly's actions. Likewise, a finding that the hearing met state standards does not preclude a federal court from concluding that the process was tainted by sex discrimination.

Moreover, abstention is inappropriate because the state court is applying settled procedural law to a routine administrative review, not resolving complex or unsettled questions of state policy with broad public implications. *Id.* Plaintiff's federal claim is fact-intensive and personal, focused on whether Cal Poly discriminated against him based on sex. Resolving that claim does not require interpreting or challenging any overarching state policy. Because the state court's decision will neither moot nor meaningfully reshape the federal claim, and because the federal action involves distinct statutory and constitutional issues, abstention under *Colorado River* is unwarranted.

### c)      *Colorado River* **Factors Weigh Against a Stay or Dismissal.**

Defendant argues that consideration of the *Colorado River* factors weighs in favor of a stay or dismissal.  *See generally*, Motion at 8:17-9:7.  Even considering these factors, abstention is not appropriate.  Per Defendant, the first factor (which court first assumed jurisdiction over any property at stake) is inapplicable; the second factor (the inconvenience of the federal forum) is neutral; and the fifth factor (whether federal law or state law provides the rule of decision on the merits) is mixed.  *Id*.  According to Defendant, "the remaining factors weigh in favor of a stay or dismissal since [1] Plaintiff did not file this federal action until after the state court action was well underway[;] [2] both actions squarely raise the issue of whether the disciplinary proceedings against Plaintiff were conducted impartially[;] and [3] it is likely that the state court action will resolve the issues in the federal court action."  *Id*.  Defendant does not elaborate on how these purported characteristics apply to the remaining five factors, and its arguments in favor of abstention should be rejected on that basis.  *See Khademi v. S. Orange Cty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027  (C.D. Cal. 2002) ("A judge is . . . neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments . . . [T]o the extent that [Defendant] failed to develop any additional argument[s] or provide any legal support for them, [it] has waived them").  Notwithstanding, each remaining factor is addressed in turn.

### (1)      Avoiding Piecemeal Litigation.

Under *Colorado River* abstention, the Court is to consider avoiding piecemeal litigation.  "'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'"  *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842-843 (9th Cir. 2017) (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)).  "A general preference for avoiding piecemeal litigation *is insufficient* to warrant abstention, however.  Any case in which *Colorado River* is implicated will inevitably involve the possibility of 'conflicting results, piecemeal litigation, and some duplication of judicial efforts,' which

are the 'unavoidable price of preserving access to . . . federal relief.'" *Seneca Ins. Co.*, 862 F.3d 842-43 (quoting *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991)).

Defendant ostensibly argues that because "both actions squarely raise the issue of whether the disciplinary proceedings against Plaintiff were conducted impartially," Motion at 8-9 (citing *Moran v. City of Pasadena*, No. LA CV15-09136 JAK (MRWx), 2016 WL 11700576 (C.D. Cal. May 11, 2016) (" Each is premised on allegations as to the same underlying disciplinary action")), there is a risk that the state court presiding over Plaintiff's writ petition and this Court may duplicate efforts and possibly reach different results. Not so. The issue raised in Plaintiff's state court proceeding is whether Defendant afforded him a fair hearing, for which Defendant's discriminatory practices is one of several indicia of unfairness, such that Plaintiff would be entitled to a judgment commanding that Defendant's decision be set aside. *See* Cal. Code Civ. Proc. § 1094.5, subd. (f). In contrast, the instant matter focuses primarily on Defendant's discriminatory practices in violation of Title IX, for which Defendant's investigation and hearing process are indicia of discrimination, such that Plaintiff would be entitled to damages and injunctive relief. *See* ECF No. 1 at 34 (seeking damages and the issuance of a temporary restraining order and preliminary and permanent injunction). Additionally, Plaintiff alleges in the instant case causes of action based on contract and tort against Defendant, which are beyond the scope of his state court writ proceeding. *See* Cal. Code Civ. Proc. § 1094.5, subd. (b) ("The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion").

Further, Defendant's argument reflects the general "possibility of 'conflicting results, piecemeal litigation, and some duplication of judicial efforts,'" that are attendant to any case in which *Colorado River* is implicated. *Seneca Ins. Co.*, 862 F.3d 842. This general preference for avoiding piecemeal litigation is insufficient to warrant abstention.

Instead, "there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic." *Id.* at 843.  Defendant identifies none.

### (2)    The Order of Jurisdiction.

The Court must consider the order in which the forums obtained jurisdiction. "[D]istrict courts are instructed not simply to compare filing dates, but to analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'"  *Seneca Ins. Co.*, 862 F.3d 843 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 9-13 (1983)).

Defendant argues only that "Plaintiff did not file this federal action until after the state court action was well underway."  Motion at 8:21-22.  Defendant's reliance on the filing date of the state court action in relation to the federal action, without more, is insufficient to warrant abstention and lacks merit.  *See Seneca Ins. Co.*, 862 F.3d at 843 (rejecting as meritless defendant's argument that the state court action was filed first because plaintiff amended its original complaint).  Instead, Defendant is required to analyze the *progress* of the case.  *Id.*

A review of the state court docket demonstrates that the state court proceeding has not progressed significantly.  The writ proceeding commenced on November 26, 2024. *See John Doe v. Board of Trustees of the California State University*, Los Angeles County Superior Case No. 24STCP03862, at docket entry November 26, 2024.  Additionally, no discovery has occurred given that the writ proceeding is limited in scope to reviewing the administrative record.  *See Pomona Valley Hosp. Med. Ctr. v. Superior Court*, 55 Cal. App. 4th 93, 109 (1997) ("part of those limits include narrow restrictions on discovery and augmenting the administrative record").  Moreover, the parties are yet to complete briefing on Plaintiff's writ petition, and the hearing on Plaintiff's writ petition will be held no earlier than November 6, 2025.  *See John Doe v. Board of Trustees of the California State University*, Los Angeles County Superior Case No. 24STCP03862, at docket entries August 14, 2025, through August 29, 2025.  The progress in the state court proceeding, thus, weighs against abstention here.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

20

### (3)    Federal Rights and State Court Resolution of Issues.

*Colorado River* also requires the Court to consider "whether the state court proceedings can adequately protect the rights of federal litigants" (the "adequacy" factor) and "whether the state court proceedings will resolve all issues before the federal court" (the "parallelism" factor). *Seneca Ins. Co.*, 862 F.3d at 845 (citing *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011)). The adequacy factor "looks to whether the state court might be unable to enforce federal rights," not the federal court's adequacy to protect state rights. *Seneca Ins. Co.*, 862 F.3d at 845; *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990). This factor is more relevant when it counsels against abstention; inadequacy of the state forum may preclude abstention, but the alternative never compels abstention. *Seneca Ins. Co.*, 862 F.3d at 845 (citing *Cone Mem'l Hosp.*, 460 U.S. at 25). With regard to the parallelism factor, "'the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes' a *Colorado River* stay or dismissal." *R.R. St. & Co.*, 656 F.3d at 982 (quoting *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032 (9th Cir. 2005)).

Defendant does not offer any argument that Plaintiff's federal rights will be protected in state court. Nor can it. The scope of Plaintiff's state court writ proceeding is limited to "whether the respondent [Defendant] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." Cal. Code Civ. Proc., § 1094.5, subd. (b). As a result, Plaintiff is precluded from proceeding with his federal claim for gender discrimination in violation of Title IX in state court. For this reason, the state court is also incapable of resolving all issues before the federal court. Thus, the "adequacy" and "parallelism" factors weigh against abstention.

### (4)    Avoidance of Forum Shopping.

The final *Colorado River* factor is the desire to avoid forum shopping. In doing so, the Court considers "whether either party improperly sought more favorable rules in its

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

21

choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co.*, 862 F.3d at 846.

Defendant does not and cannot argue that this factor weighs in favor of abstention. The docket record in *John Doe v. Board of Trustees of the California State University*, Los Angeles County Superior Case No. 24STCP03862 is devoid of any evidence of Plaintiff suffering any setbacks. Indeed, the state court has not made any rulings on the substantive issues before it. Consequently, this factor weighs against abstention.

Defendant relies on and *Boermeester v. Univ. of S. Cal.*, No. CV 19-2137 FMO (MBKx), 2025 U.S. Dist. LEXIS 45205 (C.D. Cal. Mar. 10, 2025) in support of its argument that *Colorado River* abstention applies and supports dismissal of Plaintiff's Title IX claim, particularly where the state court made adverse finding in the state court proceeding. *Boermeester*, however, concerned the *Rooker-Feldman* doctrine, not *Colorado River* abstention. *Id.* at 7. Further, given the nature of the relief sought in this case (damages and injunctive relief barring enforcement of Defendant's administrative determination) compared to the relief sought in the state writ proceeding (a judgment setting aside the administrative decision), the *Rooker-Feldman* doctrine would not apply here. *See Wind River Res., LLC v. Guenther*, 2010 U.S. Dist. LEXIS 19104, *7 (D. Ariz. Mar. 3, 2010) ("the relief sought in the First Amended Complaint does not include having this Court set aside the state administrative ruling that denied Wind River a water export license; rather, the relief sought in this action involves damages for the defendants' allegedly wrongful conduct during the ADWR proceeding").

Ultimately, Defendant offers no persuasive argument supporting *Colorado River* abstention and the Court should reject Defendant's related arguments accordingly.

### 2. *Younger* Abstention Does Not Apply Here.

Defendant also argues that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) (generally concerning a federal plaintiff who *sought to enjoin a state criminal prosecution*) applies. *Younger* abstention, however, does not apply in this context, and the Court should reject Defendant's attempts to stymie Plaintiff's claims on that basis.

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### a)  *Legal Standard Governing Younger Abstention.*

There exists a "strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  To that end, federal courts have a presumptive, virtually unflagging, obligation to decide cases within their jurisdiction.  *Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025).  "*Younger* abstention is an exception to that rule, reflecting a 'national policy forbidding federal courts *to stay or enjoin pending state court* proceedings except under special circumstances.'"  *Id.* (citing *Younger*, 401 U.S. at 41 (emphasis added)).  The *Younger* abstention doctrine has been extended "to prevent federal court injunctions of certain *ongoing* state civil proceedings."  *Id.* (emphasis added).  "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges."  *Younger* abstention does not apply because Plaintiff does not seek for this Court to enjoin any state court proceedings.  Should the Court conclude otherwise, *Younger* abstention would also not apply because Defendant has not demonstrated that all four prerequisites for abstention apply.

### b)  *Younger Abstention Is Inapplicable Because Plaintiff Does Not Seek to Enjoin State Court Action.*

The threshold question underlying the *Younger* abstention analysis is whether Plaintiff seeks for the Court to enjoin the state court writ proceeding.  The relief requested in Plaintiff's complaint is clear, and Plaintiff omits any request for this Court to enjoin the state court writ proceedings that Plaintiff himself commenced.  *See* ECF No. 1 at 34-35.

Aware that Plaintiff does not seek for the Court to enjoin the state court writ proceeding, Defendant argues that Plaintiff's request for a temporary restraining order and preliminary and permanent injunction "would have the practical effect of enjoining the state action."  Motion at 12:11-18.  In support of this contention, Defendant relies on *Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019), wherein the Court of Appeals

held that *Younger* abstention was appropriate.  There, the federal plaintiffs filed an action in federal district court against the federal defendant city alleging numerous constitutional violations in relation to the city's closure of the plaintiff's motel and plaintiffs' eviction, and their requests included declaratory and injunctive relief.  *Id*. at 1041.  The city, however, also almost simultaneously filed a nuisance complaint in state court against the plaintiff and motel, seeking, among other relief, a declaration that the motel was a public nuisance.  *Id*.  In finding that *Younger* abstention was appropriate, the *Herrera* Court reasoned that plaintiffs' request for declaratory relief in the district court would have the same practical impact as injunctive relief on the pending state proceeding brought by the defendant as a result of the preclusive effect of the federal court judgment.  *Id*. at 1048.

Unlike *Herrera*, here, the Court could issue injunctive relief that has no impact on the relief sought through the state court writ proceeding.  The instant case concerns primarily Defendant's violation of Title IX based on gender discrimination, for which Plaintiff requests injunctive relief enjoining enforcement of Defendant's administrative findings and disciplinary sanctions against him and requiring Defendant to remove the findings and disciplinary notation from his transcript and issue his earned undergraduate degree, backdated to June 2023.  The Court could find that Defendant engaged in discriminatory conduct in violation of Title IX, irrespective of how that discriminatory conduct impacted the underlying discipline.  The harm Plaintiff suffered as a result of Defendant's discriminatory conduct is not limited to receiving an adverse disciplinary hearing determination, *see* ECF No. 1 at ¶ 113; Plaintiff's harm also includes reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, and economic injuries.  *See* ECF No. 1 at ¶ 116.  In contrast, the only relief available to Plaintiff in his state court writ proceeding is a judgment commanding that Defendant's decision on Plaintiff's disciplinary hearing be set aside.  *See* Cal. Code Civ. Proc. § 1094.5, subd. (f).

Ultimately, the remaining cases on which Defendant relies in support of *Younger* abstention each involve the party disfavoring abstention seeking the court to enjoin the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

24

state court proceeding, s*ee Roshan v. McCauley*, 130 F.4th 780, 781 (9th Cir. 2025)
(concerning plaintiff's appeal from the district court's dismissal of his federal lawsuit to
enjoin the California Department of Real Estate disciplinary proceeding against him);
*Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 74 (2013) ("Sprint filed a complaint against
Windstream with the IUB asking the Board to enjoin Windstream from discontinuing
service to Sprint"); *Doe v. Univ. of Ky.*, 860 F.3d 365, 368 (6th Cir. 2017) (" Doe filed an
action in the district court seeking to enjoin Defendants from conducting the hearing based
on alleged unconstitutional flaws in the University's policies"); *Choudhry v. Regents of
the Univ. of Cal.*, Case No. 16-cv-05281-RS, 2016 U.S. Dist. LEXIS 155745, *1 (N.D.
Cal. Nov. 9, 2016) ("Plaintiff Sujit Choudhry seeks to enjoin pending disciplinary
proceedings initiated by the [university]"); *Sanchez v. Ariz. Bd. of Regents*, No. CV-15-
01591-PHX-JAT, 2015 U.S. Dist. LEXIS 152729, *4-*5 (D. Ariz. Nov. 10, 2015)
("Plaintiff filed a motion to enjoin ASU from carrying out the November 6 hearing");
*Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 615 (9th Cir. 2003) (Plaintiff filed this
action under 42 U.S.C. § 1983, seeking to enjoin the state proceedings on the ground that
the Board had failed to preserve evidence to which Plaintiff was constitutionally entitled");
*Kenneally v. Lungren*, 967 F.2d 329, 330 (9th Cir. 1992) ("Dr. Leo F. Kenneally filed a
complaint in the district court . . . seeking to enjoin the Attorney General . . . from holding
an administrative hearing to revoke his physician's license"), or the court finding that
proceeding with the federal action would in effect enjoin the state court action.  *See
Stockton v. Brown*, No. 24-3777, 2025 U.S. App. LEXIS 24035 (9th Cir. Sep. 17, 2025)
(indicating that federal action would have the practical effect of enjoining state court
proceedings); *DeJesus v. County of Mariposa*, No. 1:21-cv-00520-DAD-BAM (E.D. Cal.
Feb. 9, 2022) (same).  Because Plaintiff does not request the Court to enjoin any state
court proceeding expressly or implicitly, *Younger* abstention is inapplicable.

### c)    *Defendant Cannot Satisfy Younger Criteria.*

If the Court determines that Plaintiff's requested relief has the practical effect of
enjoining the state court writ proceeding (it should not), it should conclude that abstention

---

is not appropriate here because Defendant is unable to establish all requirements necessary for *Younger* abstention. Specifically, Defendant cannot establish that the state court writ proceeding "allow[s] litigants to raise federal challenges." *Younger*, 401 U.S. at 43.

"In determining whether a federal plaintiff has an adequate opportunity to raise his constitutional claims during state-court judicial review of an administrative decision, courts ask whether 'state law clearly bars the interposition of the constitutional claims.'" *Choudhry*, 2016 U.S. Dist. LEXIS 155745, at *17 (quoting *Moore v. Sims*, 442 U.S. 415, 425-26 (1979)). In making this determination, courts consider whether state law raises procedural barriers to the presentation of the federal challenges. *See id*. at 430.

Defendant argues that Plaintiff is allowed to raise federal challenges through his state court writ proceeding under Cal. Code Civ. Proc., §§ 1085 and 1094.5. *See* Motion at 11:26-12:10. Defendant is incorrect. With respect to Plaintiff's state court writ proceeding, the scope of writ relief under Section 1085 is limited to "compel[ling] the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." Cal. Code Civ. Proc. § 1085, subd. (a). The scope of a writ proceeding under section 1094.5, in turn, is limited to "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." Cal. Code Civ. Proc. § 1094.5, subd. (f). Neither statute allows the state court to review whether Defendant's conduct discriminates against Plaintiff on the basis of gender in violation of Title IX. *See Western Surgical Supply Co. v. Affleck*, 110 Cal.App.2d 388, 393 (1952) ("Whether petition has violated the various acts, or whether those acts are unconstitutional, are questions beyond the scope of this [1094.5] proceeding"). Because Plaintiff is unable to raise a federal Title IX gender discrimination claim for damages in the state court writ action, *Younger* abstention is inappropriate.

## B. PLAINTIFF ALLEGES SUFFICIENTLY HIS CAUSE OF ACTION FOR VIOLATION OF TITLE IX.

According to Defendant, Plaintiff's allegations are insufficient to state a claim that

Plaintiff was discriminated against on the basis of sex. Motion at 12:21-17:12. Per Defendant, Plaintiff's allegations "fall[] woefully short" of meeting that standard of alleging specific instances of bias in his disciplinary proceedings. Defendant is, again, incorrect. The Complaint is replete with allegations demonstrating specific instances of Defendant's discriminatory conduct. As set forth in fuller detail above, Defendant utilized a hearing investigator that had previously been accused of unfairness and discriminatory conduct against male students (ECF No. 1 at ¶ 47); treated Jane Roe differently than Plaintiff during the investigative process and hearing, to Jane Roe's benefit and Plaintiff's detriment (*id.* at ¶¶ 58-70, 78-86); refused to investigate Plaintiff's report of nonconsensual sexual activity by Jane Roe, despite commencing an investigation into Jane Roe's report of nonconsensual sexual activity against Plaintiff, even after she graduated (*id.* at ¶¶ 53, 68-71); conferred Jane Roe's degree despite Plaintiff's allegation against her and while withholding Plaintiff's degree (*id.* at ¶ 49); and failed to notify Plaintiff of his rights and reporting options and supportive measures, despite doing so for Jane Roe. *Id.* at ¶¶ 73, 75.

Rather than address the sufficiency of Plaintiff's express allegations, Defendant instead fabricates and attributes to Plaintiff an allegation, ostensibly to create a pleading issue where none exists. Defendant argues that Plaintiff's Complaint "contains a single conclusory reference to an 'unlawful pattern of gender-biased adjudications and disparate treatment applied to males and females' on 'information and belief' (Compl. ¶ 112)." Motion at 13:8-11. Contrary to Defendant's misquote, Plaintiff specifically alleges, "Upon information and belief, *CSU possesses additional documentation demonstrating* its unlawful pattern of gender-biased adjudications and disparate treatment applied to males and females," ECF No. 1 at ¶ 112 (emphasis added), in addition to numerous other allegations of specific instances of gender discrimination by Defendant.

Defendant also argues that Plaintiff's references to the Cozen O'Connor report on the CSU system "do not mention gender bias." Motion at 13:14-15 (citing ECF No. 1 at ¶¶ 23-24). Defendant's quibble with Plaintiff's word choice is a distinction without a

difference because Plaintiff includes allegations that demonstrate gender bias without the need to state so expressly. ECF No. 1 at ¶¶ 22-23 (alleging the report "identified systemic failures of how CSU campuses handled Title IX complaints and sexual misconduct" including inconsistent policies and procedures, uneven enforcement, inconsistent treatment of respondents, and the process was used sometimes politically or to protect the institution). Further, Defendant's argument ignores Plaintiff's other allegations of specific instances of Defendant's gender discrimination. *See, e.g.*, *id.* at ¶¶ 47, 49, 53, 58-71, 73, 75, 78-86.

Defendant next argues that "Plaintiff's alleged procedure errors do not give rise to a plausible inference that he was discriminated against based on his sex." Motion at 13:24-25. At the pleading stage, however, the issue is not whether Plaintiff will ultimately prevail. *Jackson*, 544 U.S. at 184. The Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the non-moving party. *Metzler Inv.*, 540 F.3d at 1061. Thus, Plaintiff's invitation for the court to resolve a question of fact and determine whether an alleged procedural error gives rise to a plausible inference that he was discriminated against based on his sex is improper at this stage. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]").

Further, Defendant's reliance on out-of-circuit cases for the proposition that procedural errors do not suffice to state a claim for gender discrimination fail. *See* Motion at 13-15 (citing *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st Cir. 2022), *Gash v. Rosalind Franklin Univ.*, 117 F.4th 957, 967 (7th Cir. 2024), *Doe v. Univ. of Denver*, 952 F.3d 1182, 1197 (10th Ci. 2020), and *Doe v. Samford Univ.*, 29 F.4th 675, 690 (11th Cir. 2022)). Other courts in the Ninth Circuit have expressed that indicia of gender discrimination may suffice to state a claim for violation of Title IX. *See, e.g.*, *Doe v. Bd. of Trs. of Whitman Coll.*, 670 F. Supp. 3d 1155, 1164 (E.D. Wash. Apr. 25, 2023) ("Evidence of pressure to discriminate may raise a Title IX plaintiff's claims to the level

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

28

of plausibility required to survive Fed. R. Civ. P. 12(b)(6)"); *Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930, 936 (9th Cir. 2022) (finding "(1) allegations of external pressures, (2) allegations of an internal pattern and practice of bias, and (3) allegations of specific instances of bias in his case" sufficient to withstand dismissal of Title IX claims).

Lastly, as at least one district court has recognized, "sufficiently alleging causation in Title IX claims in the context of higher education disciplinary proceedings presents unique informational challenges." *Francis v. Univ. of Balt.*, No. RDB-24-2295, 2025 U.S. Dist. LEXIS 135027, *14-15 (D.C. Mary. Jul. 16, 2025) (citing *Carter v. Bowie State Univ.*, Civ. No. GJH-20-2725, 2022 U.S. Dist. LEXIS 42650, 2022 WL 717043, at *8 (D. Md. Mar. 9, 2022). "Since student disciplinary proceedings are often private, in many cases the information necessary to determine whether similarly situated students have been treated differently may be solely in the defendant's possession." *Id.* (internal quotes omitted). As a result, "a plaintiff in such cases 'need not plead the facts of other student disciplinary proceedings to which he does not have access to state a claim.'" *Id.* (quoting *Carter v. Bowie State Univ.*, 2022 U.S. Dist. LEXIS 42650 (quoting *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 931 (W.D. Va. 2017)). Thus, "to adequately allege causation in a Title IX discrimination claim in the context of university disciplinary proceedings, a plaintiff must plead facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex." *Francis*, 2025 U.S. Dist. LEXIS 135027, *14. Plaintiff has done just that. *See, e.g.*, ECF No. 1 at ¶¶ 47, 49, 53, 58-71, 73, 75, 78-86.

## C.   PLAINTIFF ADEQUATELY PLEADS STATE LAW CLAIMS.

### 1.   Plaintiff Sufficiently Pleads Claims for Breach of Contract and Promissory Estoppel.

Defendant argues that Plaintiff has failed to plausibly allege a breach of contract claim or promissory estoppel claim against it. Motion at 17:16-19:18. Not so.

Plaintiff alleges that, as a student, he agreed to be bound by Defendant's "policies, rules, regulations, and discipline procedures." ECF No. 1 at ¶ 121. These include, "but [are] not limited to the CSU Nondiscrimination Policy and CSU Executive Order 1098."

1  *Id.* at ¶ 120.  Defendant contends that such documents do not constitute a contract,

2  disagreeing with *Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809

3  (2007) (standing for the proposition that "the basic relationship between a student and a

4  university is contractual in nature") on the basis that it dealt with a university's effort to

5  raise educational fees after students received bills specifying amounts to be paid.

6  Defendant's distinction is immaterial and does not overcome additional authority to the

7  contrary.  *See Andersen v. Regents of University of California*, 22 Cal.App.3d 763, 769-

8  770 (1972) ("'[B]y the act of matriculation, together with payment of required fees, a

9  contract between the student and the institution is created containing two implied

10  conditions: (1) that the student will not be arbitrarily expelled, and (2) that the student will

11  submit himself to reasonable rules and regulations for the breach of which, in a proper

12  case, he may be expelled'" (quoting 49 Cal.Jur.2d, Universities and Colleges, § 58, at p.

13  505)).

14       Defendant also argues that Plaintiff fails to allege facts sufficient to establish a

15  breach by Defendant.  Motion at 19:3-17.  Defendant overlooks that Plaintiff alleged

16  numerous facts demonstrating that Defendant arbitrarily expelled him through its unfair

17  and discriminatory investigation and hearing processes, in breach of the parties'

18  agreement.  *See, e.g.*, ECF No. 1 at ¶¶ 47, 49, 53, 58-71, 73, 75, 78-86.  Plaintiff, thus,

19  sufficiently pleaded the existence of an agreement with Defendant, ECF No. 1 at ¶ 120-

20  122, and Defendant's breach of the parties' agreement.  *Id.* at ¶ 123.

21       **2.    Plaintiff Sufficiently Pleads Claims for Negligence and IIED.**

22       In its Motion, Defendant argues that Plaintiff's claims for negligence and intentional

23  infliction of emotional distress (IIED) fail because it is immune from common law tort

24  liability under Cal. Gov. Code, § 815 ("Except as otherwise provided by statute . . . a

25  public entity is not liable for an injury, whether such injury arises our of an act of omission

26  of the public entity or a public employee or any other person), Cal. Gov. Code, § 815.2,

27  subd. (b) ("[e]xcept as otherwise provided by statute, a public entity is not liable for an

28  injury resulting from an act or omission of the public entity where the employee is immune

from liability"), 820.2 ("[a] public employee is immune from liability if the act or omission resulting in injury was the result of the exercise of the discretion vested in the employee, whether or not such discretion was abused), and 821.6 ("[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause"). *See* Motion at 19:18-23:9.

Cal. Gov. Code, § 815, however, contains a number of exceptions, the most relevant of which is section 815.2, subd. (a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Moreover, Cal. Gov. Code, § 821.6 also has an exception to government immunity, allowing suit for acts that are outside the scope of the defendant's job duties.  Courts have also recognized that the Government Claims Act does not provide blanket immunity to a public entity on a common law claim, and that the public entity can be held liable if the employee is not separately immune from liability.  *Compare Blanco v. Cnty. of Kings (Blanco)*, 142 F.Supp.3d 986, 1003-1004 (E.D. Cal. 2015) (denying a motion to dismiss where a plaintiff had adequately pled the elements of an IIED claim against a public employee and the defendant failed to address the issue of vicarious liability) *with Hansen v. Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1547 (Cal. Ct. App. 2008) (finding a public entity was immune from an IIED claim because the employee was immune from tort liability for any acts done by the employee in preparation for formal judicial or administrative proceedings).

Here, Plaintiff's negligence and IIED claims are not barred by government immunity because Defendant's investigator and hearing officer acted outside the scope of their job duties and contrary to Defendant's policies by engaging in prohibited gender discrimination.  Further, a determination of "whether an employee has acted within the scope of his employment is ordinarily a factual issue to be resolved by the trier of fact."

*Fowler v. Howell*, 42 Cal.App.4th 1746, 1751 (1996). As a result, it is premature at this stage to evaluate whether as a matter of law that Plaintiff's negligence and IIED are barred by government immunity.

Finally, Defendant also argues that Plaintiff failed to plead a cognizable duty giving rise to his negligence claim. In the process, Defendant ignores that Plaintiff alleges that "California courts have recognized the 'special relationship' that exists between a university and its students, which gives rise to a duty of care 'while they are engaged in activities that are part of the school's curriculum or closely related to its delivery of educational services.'" ECF No. 1 at ¶ 141 (citing *Univ. of S. California v. Superior Court of Cty. of Los Angeles*, No. B288180, 2018 WL 6649594, at *8 (Cal. Ct. App. Nov. 27, 2018). Consequently, the Court should reject Defendant's argument and deny its Motion.

### 3.   Cal. Civ. Code, § 47 Does Not Bar Plaintiff's State Law Claims

Defendant argues that Plaintiff's state law claims are barred by Cal. Civ. Code, § 47. Motion at 23:12-25:14. Specifically, Defendant argues that the privileges extend generally to a "public entity's internal investigation as an 'official proceeding' under Civil Code section 47, subdivision (b)," and CSU's underlying investigation is such an "official proceeding authorized by law" and a "proceeding authorized by law and reviewable." Motion at 23:15-24:16 (relying on Cal. Civ. Code, § 47, subd. (b)). As a result, Defendant contends Plaintiff's claims based on contract and tort are absolutely barred. *Id*. at 24:17-25:14.

Defendant ignores the express exceptions to the publication and broadcast privileges set forth in Section 47, subd. (b)(1)-(5). Significantly, excluded from these privileges are "a communication that is "made in furtherance of an act of intentional destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence, whether or not the content of the communication is the subject of a subsequent publication or broadcast which is privileged pursuant to this section." Cal. Civ. Code, § 47, subd. (b)(2). "'[P]hysical evidence" means evidence specified in Section 250 of the [California] Evidence Code . . . ." *Id*. Physical

evidence is defined broadly, and includes, inter alia, "any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof."  Cal. Evid. Code, § 250.

Here, Defendant embellished and mischaracterized witness statements in Preliminary Report 2. ECF No. 1 at ¶ 58.  Defendant also mischaracterized as "undisputed facts" certain facts that Plaintiff represented as disputed.  *Id*. at ¶¶ 66-67.  In doing so, Defendant altered physical evidence.   While Plaintiff maintains Defendant altered physical evidence for purpose of depriving him, a male student, of the use of that evidence, should the Court determine Defendant's intent is unclear, it should also find that Defendant's intent is a question of fact not to be resolved at the pleading stage.  *See, e.g.*, *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 670 n.12 (9th Cir. 1990) ("A state of mind issue such as actual motive is a 'pure question of fact' normally subjected to review under the 'clearly erroneous' standard"); *Jones v. Jones*, 183 Cal. App. 2d 468, 472 (1960) ("The rule is well settled in California, as elsewhere, that . . . the question of intent is a question of fact to be determined by the trial court or jury");  *Shen v. Miller*, 212 Cal.App.4th 48, 57 (2012) ("Generally, the formation of an attorney-client relationship is a question of fact.  [Citation] Intent and conduct are critical to the formation of an attorney-client relationship. [Citation.]") (internal quotes and citations omitted).  Consequently, the Court should reject Defendant's claim of absolute privilege under Cal. Civ. Code, § 47.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Respectfully submitted,


Date:  September 25, 2025                    By:  _____/S/ Jenna E. Parker_____.

                                                          HATHAWAY PARKER INC.
                                                          Attorneys for Plaintiff John Doe

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

33

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff John Doe, certifies that this brief complies with the 25-page limit set by section 9(d) of the Initial Standing Order for Civil Cases assigned to Judge John A. Kronstadt.

Respectfully submitted,

Date:  September 29, 2025                 By:  _____/S/ Jenna E. Parker_____.

HATHAWAY PARKER INC.
Attorneys for Plaintiff John Doe