UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-06691-JAK (PVCx) | Date | December 30, 2025 |
| Title | John Doe v. The Board of Trustees of the California State University | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION TO DISMISS (DKT. 14) [CASE STAYED]**

## I. Introduction

On July 22, 2025, John Doe ("Plaintiff" or "Doe"), proceeding pseudonymously, filed this action against the Board of Trustees of the California State University ("Defendant" or "CSU") and Does 1–20. Dkt. 1 ("Complaint"). The Complaint advances the following causes of action: (1) violation of Title IX, 20 U.S.C. § 1681, *et seq.*; (2) breach of contract; (3) promissory estoppel; (4) negligence; and (5) intentional infliction of emotional distress. *Id.* ¶ 102–153.

On September 19, 2025, CSU filed a motion to dismiss, Dkt. 14 ("Motion"), and a request for judicial notice, Dkt. 14-2. On September 29, 2025, Plaintiff filed an opposition to the Motion. Dkt. 15 ("Opposition"). On October 6, 2025, CSU filed a reply in support of the Motion. Dkt. 16 ("Reply").

A hearing on the Motion was held on October 20, 2025, and it was taken under submission. Dkt. 20. For the reasons stated in this Order, the Motion is **GRANTED**.

## II. Background

### A. The Parties

The Complaint alleges that Doe, a resident of California who is a male, completed his senior year at California Polytechnic State University, San Luis Obispo ("Cal Poly") after the spring semester of 2023. Dkt. 1 ¶ 1. This action arises out of CSU's Title IX investigation into alleged sexual misconduct by Plaintiff against non-party Jane Roe, who is alleged to have been a female student at Cal Poly who graduated in June 2023. *Id.* ¶¶ 3, 108.

The Complaint alleges that Defendant is the "governing body of the [California State University] system," a recipient of federal funds, and with headquarters in Long Beach, California. *Id.* ¶ 2.

B. Factual Allegations

1. <u>The Relationship Between Plaintiff and Roe</u>

The Complaint alleges that Plaintiff and Roe were friends and worked together on Cal Poly's campus. Dkt. 1 ¶ 26. It is alleged that, on March 18, 2023, after Roe had recently broken up with her boyfriend, Plaintiff and Roe celebrated St. Patrick's Day together at Plaintiff's off-campus residence with other friends. *Id.* ¶ 27. After flirting throughout the night, Roe and Plaintiff "consensually kissed," first in private and then in front of their friends. *Id.* ¶ 28. Following that, it is alleged that Plaintiff engaged in consensual sexual intercourse with Roe while using a condom. *Id.* ¶ 30. The Complaint alleges that Plaintiff stopped the intercourse shortly after its commencement when Roe "made a face, said, 'Stop, stop, stop' and 'this hurts.' " *Id.* ¶ 30. Plaintiff allegedly "immediately stopped all sexual activity," gave Roe clothes, and allowed Roe to sleep in Plaintiff's bed with Plaintiff. *Id.* ¶¶ 30–31.

The next day, Roe was picked up by a friend; Roe allegedly told her friend about the sexual intercourse, but "made no claims" about it being nonconsensual. *Id.* ¶ 34. Further, later that morning, Plaintiff and Roe met at Roe's house to discuss the impact of their sexual intercourse on their friendship. *Id.* ¶ 35. Plaintiff "apologized for his part in the consensual sexual activity and for crossing a friendship boundary" and Roe "acknowledged that it was a '50/50 fuckup' " and that she "could have left at any time." *Id.* ¶ 36.

Roe allegedly texted Plaintiff later that evening. *Id.* ¶ 37. In her text messages, Roe allegedly "claimed that she had pretended to be asleep, that Plaintiff continued to have sex with her after she said 'stop' and 'this hurts,' and that Plaintiff had choked her," all of which is alleged to be false. *Id.* ¶ 37.

Following the incident, it is alleged that Roe commented on Plaintiff's social media story, confirmed with Plaintiff that they were still friends and had a 20-minute phone call with Plaintiff about their shared plans to attend a music festival. *Id.* ¶ 38.

2. <u>CSU's Title IX Investigation</u>

(a) Roe's Allegations

On May 30, 2023, Plaintiff allegedly received a "No Contact Order" issued by the Civil Rights and Compliance Office ("CRCO") of CSU that required that he not contact Roe, and that was issued as part of an "Informal Resolution Agreement" ("IRA") initiated by Roe. Dkt. 1 ¶ 39. It is alleged that Roe later withdrew the IRA and opted for a "formal investigation instead." *Id.* ¶ 40. Following that, CRCO issued a "Notice of Allegations and Notice of Investigation (Track 2)." *Id.* During the pendency of the Title IX investigation, Cal Poly allegedly "refused to confer Plaintiff's earned undergraduate degree indefinitely . . . ." *Id.* ¶ 49.

In allegations made by Roe as part of the Title IX investigation, she alleged that, after she and Plaintiff consensually kissed, she informed Plaintiff that she was menstruating and did not want to have sex. *Id.* ¶ 41. It is alleged that Roe then "supposedly contradicted herself" in allegations made during the Title IX investigation by reporting that she "informed Plaintiff that she would only have sex with him with a condom." *Id.* It is alleged that Roe falsely reported, in allegations made during the Title IX investigation,

that Plaintiff stated he did not have a condom, when in fact, Plaintiff did have condoms and used one during the incident. *Id.*

Roe further alleged that she agreed to perform oral sex on Plaintiff, but withdrew after Plaintiff "strangled her" during kissing. *Id.* ¶ 42. Roe alleged that Plaintiff then provided clothes that she could wear while she slept. *Id.* Roe alleged that, as she was changing into those clothes, Plaintiff grabbed her and forcefully had sexual intercourse with her without her consent. *Id.* ¶ 43. Roe allegedly stated that she cried and told Plaintiff, "This hurts" and "Stop," but that Plaintiff ignored her statements and continued with the intercourse. *Id.*

Roe further alleged that she slept in Plaintiff's bed after the incident. *Id.* ¶ 45. During the night, Roe alleged that she was awakened on three occasions by Plaintiff as he penetrated her with his penis. *Id.* ¶ 45. On each occasion, Roe alleged she pretended to be asleep. *Id.*

Plaintiff alleges that as part of the Title IX investigation, he denied Roe's allegations. *Id.* ¶ 46.

(b) Investigation Reports

CRCO issued a First Preliminary Investigation Report on August 7, 2023. Dkt. 1 ¶ 54. It is alleged that Plaintiff submitted a response on August 21, 2023, including evidence and questions to be asked of Roe and witnesses. *Id.* ¶ 55.

CRCO then issued a Second Preliminary Investigation Report on October 5, 2023, to which Plaintiff allegedly responded on October 19, 2023. *Id.* ¶¶ 57–58. It is alleged that the Second Preliminary Investigation Report "embellished and mischaracterized" Roe's statements and improperly referred to Plaintiff's prior sexual history in violation of CSU's Nondiscrimination Policy. *Id.* ¶¶ 58–59. Further, it is alleged that, during the Second Preliminary Investigation, Plaintiff was precluded from asking Roe questions about her sexual history, as well as her medical claims. *Id.* ¶¶ 60–65. It is also alleged that the assigned investigator improperly characterized certain facts as "undisputed" when in fact, Plaintiff disputed them. *Id.* ¶¶ 66–67. Finally, it is alleged that CSU refused to investigate Plaintiff's allegation that Roe had sexually assaulted him by engaging in sexual activity with Plaintiff while he was asleep and unconscious, and that CSU refused to offer Plaintiff any accompanying supportive measures, including counseling or mental health services, which had allegedly been offered to Roe. *Id.* ¶¶ 68–75.

CRCO issued the Final Investigation Report on November 9, 2023. *Id.* ¶ 76; *see also* Dkt. 14-2, Ex. B at 31–83. The Final Investigation Report includes a summary of the allegations, a description of the standard of proof, a procedural history of the investigation, summaries of statements made during interviews of Plaintiff, Roe, and witnesses, and a list of material disputed and undisputed facts. Dkt. 14-2, Ex. B at 31–83.

(c) Title IX Hearing

On January 30–31, 2024, an adjudication hearing was held via Zoom to determine whether Plaintiff violated CSU's Nondiscrimination Policy. Dkt. 1 ¶ 77. Adrienne Publicover served as the Hearing Officer. *Id.*

At the hearing, it is alleged that Publicover shifted the burden to Plaintiff to disprove Roe's allegations. *Id.* ¶ 78. It is further alleged that Publicover consistently asked Roe and her witnesses leading questions, while Plaintiff was subject to "misleading, argumentative, and badgering questions in a disdainful tone." *Id.* ¶ 79.

It is alleged that, on February 21, 2024, Publicover issued a Hearing Decision Report, which found Roe "very credible" and Plaintiff "less credible." *Id.* ¶ 80. It is alleged that Publicover disregarded various "material inconsistencies" and "significant admissions" in Roe's statements and discounted Plaintiff's consistent statements. *Id.* ¶¶ 80–81, 83. Publicover allegedly "held an impermissible presumption based on gender stereotypes" that Roe was telling the truth and Plaintiff was not. *Id.* ¶ 82. Further, it is alleged that Publicover refused to consider a written closing statement submitted by Plaintiff and "faulted" him for the submission of the statement, notwithstanding that no rules prohibited its submission. *Id.* ¶ 86; *see also* Dkt. 14-2, Ex. C at 84–89.

(d) Sanctions

Following the hearing, on March 1, 2024, Plaintiff submitted to Publicover a statement that explained that a sanction of expulsion was not appropriate due to Plaintiff's career goals, that Roe had already graduated and that Plaintiff had already completed his coursework. Dkt. 1 ¶¶ 87–88; *see also* Dkt. 14-2, Ex. D at 90–95.

On March 5, 2024, Publicover recommended that Plaintiff be expelled (the "Recommendation"). Dkt. 1 ¶ 89. In the Recommendation, it is alleged that Publicover "personally attacked Plaintiff for maintaining his innocence during the proceedings" and exercising his rights. *Id.* ¶ 90. It is alleged that Publicover sanctioned Plaintiff more severely in the Recommendation "because he reported that Jane Roe had sexually assaulted him while he was asleep and unconscious." *Id.* ¶ 91.

On March 11, 2024, Keith B. Humphrey, Vice President for Student Affairs, allegedly issued a Final Decision Letter formally expelling Plaintiff. *Id.* ¶ 94.

It is alleged that the sanction imposed "serves no educational or safety purpose" because Plaintiff "has no ongoing academic relationship with CSU . . . ." *Id.* ¶ 92. Accordingly, it is alleged that the decision to expel Plaintiff, "a male student who had already completed all coursework and degree requirements, lacked any rational connection to legitimate institutional goals and was driven by gender bias." *Id.* ¶ 93.

Because of the withholding of his degree and his ultimate expulsion, Plaintiff alleges that he lost "a cancer research assistant job offer" and has been forced to "forego [sic] his dreams of attending graduate school to obtain his Ph.D. and pursuing a career performing cancer research." *Id.* ¶ 52.

It is also alleged that, even though Roe was "also part of the investigation," Cal Poly "conferred her undergraduate degree and allowed her to apply, become accepted, and start a post-graduate program during the investigative process." *Id.* ¶¶ 51, 53.

3. <u>Subsequent Proceedings</u>

On March 22, 2024, it is alleged that Plaintiff submitted an appeal to the CSU Chancellor's Office. *Id.* ¶ 95; *see also* Dkt. 14-2, Ex. E at 96–106. On June 4, 2024, it is alleged that the CSU Chancellor's Officer denied the appeal and upheld Plaintiff's expulsion. Dkt. 1 ¶ 96.

On November 26, 2024, Plaintiff filed a Petition for Writ of Mandamus in the Los Angeles Superior Court, captioned *John Doe v. Board of Trustees of the California State University*, No. 24STCP03862 ("Writ Action"). *Id.* ¶ 98; *see also* Dkt. 14-2, Ex. F at 107–210. As of the date of this Order, the Writ Action remains pending, with a hearing scheduled for May 7, 2026. *Doe v. Bd. of Trs. of the Cal. State Univ.*, No. 24STCP03862 (L.A. Super. Ct. filed Nov. 26, 2024).

Also on November 26, 2024, Plaintiff filed a Government Claim form, which was allegedly denied on January 22, 2025. Dkt. 1 ¶ 100–101.

C. Remedies Sought

Plaintiff seeks compensatory damages, preliminary and permanent injunctive relief barring the enforcement of sanctions against Plaintiff and requiring the issuance of his degree, and attorney's fees and costs. Dkt. 1 at 34–35.

## III. <u>Analysis</u>

A. Request for Judicial Notice

As noted, in support of the Motion, CSU filed a request for judicial notice. Dkt. 14-2 ("Request"). Plaintiff did not submit any opposition to the Request.

1. <u>Legal Standards</u>

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

District courts may take judicial notice of "records and reports of administrative bodies" as well as "undisputed matters of public record." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (quoting *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991)); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). This includes "documents on file in federal or state courts." *Harris*, 682 F.3d at 1132.

The party "requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source 'whose accuracy cannot reasonably be questioned.' " *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011) (quoting *In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 781 (Bankr. E.D. Cal. 1992)).

As to judicially noticeable documents and facts, a court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Similarly, documents that are incorporated by reference into a pleading may be considered on a motion to dismiss. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [courts] may consider materials incorporated into the complaint or matters of public record. We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." (citations omitted)). "[T]he mere mention of the existence of a document" in a complaint, however, is not sufficient to "incorporate the contents of a document" such that the document may be considered in assessing a motion to dismiss. *Id.*

2. <u>Analysis</u>

CSU seeks judicial notice of the following documents:

Exhibit A. February 21, 2024 Hearing Decision Report by Publicover;
Exhibit B. November 9, 2023 Final Investigation Report;
Exhibit C. Plaintiff's February 1, 2024 Impact Statement;
Exhibit D. Plaintiff's March 1, 2024 Sanctions Response Statement;
Exhibit E. Plaintiff's March 22, 204 Appeal of Hearing Decision Report;
Exhibit F. Plaintiff's November 26, 2024 Petition for Writ of Mandate (Los Angeles County Superior Court, Case No. 24STCP03862);
Exhibit F-1 CSU Nondiscrimination Policy, revised January 1, 2022 (attached to Plaintiff's Petition for Writ of Mandate)
Exhibit G. Defendant's January 17, 2025 Response to Plaintiff's Petition for Writ of Mandate (Los Angeles County Superior Court, Case No. 24STCP03862);
Exhibit H. CSU Executive Order 1098, revised March 29, 2019;
Exhibit I. Notice regarding Continuance of Hearing and Order (Los Angeles County Superior Court, Case No. 24STCP03862);
Exhibit J. Excerpts of Cal Poly Code of Conduct, Cal. Code Regs. tit. 5 § 41301;
Exhibit K. Excerpts of Cal Policy 2022–2026 Academic Catalog regarding Student Conduct and Discipline;
Exhibit L. Excerpts of Cal Policy 2022–2026 Academic Catalog regarding General Graduation Requirements;
Exhibit M. Excerpts of Cal Policy 2022–2026 Academic Catalog regarding Application of the Student Code of Conduct;
Exhibit N. Cozen O'Connor, The Institutional Response Group, Title IX and Discrimination, Harassment, and Retaliation (DHR) Assessment, California Polytechnic State University, San Luis Obispo (July 17, 2023).

Dkt. 14-2 at 2–3.

Courts routinely take judicial notice of administrative disciplinary documents similar to Exhibits A–E. *See, e.g.*, *Wyatt v. City of Burlingame*, No. 16-CV-2681, 2017 WL 565303, at *1 (N.D. Cal. Feb. 13, 2017) ("Courts in this district have routinely taken judicial notice of documents in the [Equal

Employment Opportunity Commission] and [Department of Fair Housing and Employment] administrative records."). The same is true of CSU's Title IX policies and reports submitted as Exhibits H–N. *See, e.g.*, *Emily O. v. Regents of the Univ. of Cal.*, No. 20-CV-8159, 2021 WL 1535539, at *6 (C.D. Cal. Mar. 9, 2021) (taking judicial notice of university Title IX policies); *Enstrom v. Regents of the Univ. of Cal.*, No. 12-CV-5168, 2013 WL 11238482, at *11 n.2 (C.D. Cal. Mar. 18, 2013) ("The Court may take judicial notice of official University policies on the basis that it is a record of an administrative body."); *see also United States v. Vlha*, 142 F.4th 1194, 1200 n.2 (9th Cir. 2025) ("Reports of government agencies are subject to judicial notice."). Moreover, courts may take judicial notice of relevant court records, which applies to Exhibits F–I. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' " (quoting *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979))).

Further, the Complaint includes allegations based on the contents of many of these Exhibits, which permits their consideration under the doctrine of incorporation-by-reference. *See, e.g.*, Dkt. 1 ¶ 80 (alleging contents of Exhibit A); *id.* ¶ 66 (alleging contents of Exhibit B); *id.* ¶ 86 (alleging contents of Exhibit C); *id.* ¶¶ 87–88 (alleging contents of Exhibit D); *id.* ¶ 95 (relying on Exhibit E); *id.* ¶ 120 (alleging contents of Exhibit F-1 and Exhibit H); *id.* ¶ 98 (alleging contents of Exhibit F); *id.* ¶¶ 23–24 (alleging contents of Exhibit N).

For these reasons, the Request is **GRANTED**.

B. Motion to Dismiss

1. <u>*Younger* Abstention</u>

Defendant argues that abstention is required under *Younger v. Harris*, 401 U.S. 37 (1971), because the relief "Plaintiff seeks here would have the practical effect of enjoining" an ongoing state disciplinary action. Dkt. 14-1 at 20.

(a) Legal Standards

"*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091–92 (9th Cir. 2008), *abrogation on other grounds Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)). *Younger* and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

*Younger*'s animating principle is the concept of "Our Federalism," which embodies:

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger*, 401 U.S. at 44.

Although originally motivated by the "fundamental policy against federal interference with state criminal prosecutions," *id.* at 46, *Younger* has been extended to cases where federal courts have been drawn into conflict with state civil and administrative proceedings. *See Sprint*, 571 U.S. at 79–80. In civil cases, "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

If those "threshold requirements" are met, the court must then "consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* (citing *Gilbertson v. Albright*, 381 F.3d 965, 978, 983–84 (9th Cir. 2004) (en banc)). "*Younger* principles apply to actions at law as well as for injunctive or declaratory relief because a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings." *Gilbertson*, 381 F.3d at 968.

A motion to dismiss on *Younger* abstention grounds is properly brought under Rule 12(b)(1).[1] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) (*Younger* abstention has been "treated as jurisdictional"); *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016) ("[A] dismissal due to *Younger* abstention [is] similar to a dismissal under Rule 12(b)(1) . . . .").

(b) Application

(i) Threshold Requirements

Defendant argues that the threshold requirements for *Younger* abstention are met as follows: (1) the Writ Action, which forms "one unitary proceeding" with CSU's underlying Title IX adjudication, is ongoing; (2) the Writ Action is quasi-criminal because it is an enforcement action designed to sanction Plaintiff for misconduct; (3) the Writ Action implicates important state interests in maintaining a just disciplinary system for student sexual misconduct; and (4) Plaintiff can raise any applicable federal challenges in the Writ Action. Dkt. 14-1 at 17–20.

[1] In considering a Rule 12(b)(1) motion, and in contrast to a Rule 12(b)(6) motion, courts are permitted to "look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). Either standard leads to the same outcome in this action because the documents submitted by Defendant are subject to judicial notice and incorporation-by-reference under Rule 12(b)(6), and may be considered *per se* in deciding jurisdiction under Rule 12(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-06691-JAK (PVCx) | Date | December 30, 2025 |
| Title | John Doe v. The Board of Trustees of the California State University | | |

Plaintiff challenges only the fourth threshold requirement. *See* Dkt. 15 at 25–26 ("[The Court] should conclude that abstention is not appropriate here because Defendant is unable to establish all requirements necessary for *Younger* abstention. Specifically, Defendant cannot establish that the state court writ proceeding 'allow[s] litigants to raise federal challenges.' " (quoting *Younger*, 401 U.S. at 43)). "[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002).

For the sake of completeness, and notwithstanding Plaintiff's waiver of a challenge to the first three threshold elements, it is determined that each is satisfied. *First*, state proceedings are ongoing because the discipline imposed through the Title IX adjudicative process is subject to ongoing state judicial review in the Writ Action, which forms a single, unitary proceeding. *See Mir v. Kirchmeyer*, No. 12-CV-2340, 2014 WL 2436285, at *11 (S.D. Cal. May 30, 2014) ("[T]he Court adopts the majority approach of treating [state] judicial review of state administrative proceedings as a unitary process that is not to be interrupted by federal court intervention."); *Phillips 66 Co. v. Sacks*, 409 F. Supp. 3d 972, 993–94 & n.18 (W.D. Wash. 2019) (collecting cases and noting that, although the Supreme Court and Ninth Circuit have not adopted this rule, each has assumed that administrative proceedings and state court judicial review form a unitary proceeding); *see also San Jose*, 546 at 1093–94 (recognizing that the "majority rule" among Circuits is that administrative proceedings and subsequent state court appeals are unitary proceedings, but declining to resolve the issue). This case is analogous to *Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017), which applied *Younger* abstention in the Title IX context, notwithstanding that state judicial review had not yet been initiated in *Doe*. *Id.* at 368, 370–71 (federal action was filed before the conclusion of the university's hearings); *see also Roshan v. McCauley*, 130 F.4th 780, 784 (9th Cir. 2025) (citing *Doe* to support the proposition that "our sister circuits have continued to abstain from state administrative proceedings dealing with licensing and disciplinary matters").

*Second*, the Writ Action is quasi-criminal in nature because the Title IX investigation was initiated by CSU to "sanction the federal plaintiff . . . for some wrongful act." *Sprint*, 571 U.S. at 79. The Title IX proceedings "bear the hallmarks of a quasi-criminal proceeding" in that: (1) a complaint was filed that triggered the provision of formal notice and the initiation of a formal investigation; (2) both sides were afforded the opportunity to present witnesses and evidence; (3) the adjudicator applied a standard of review, identified disputed and undisputed material facts, and rendered findings of fact; (4) an on the record hearing was conducted; and (5) the process resulted in serious sanctions based on a finding of misconduct. *See Choudhry v. Regents of the Univ. of Cal.*, No. 16-CV-5281, 2016 WL 6611067, at *3 (N.D. Cal. Nov. 9, 2016) (disciplinary proceedings against university employee were quasi-criminal based on similar characteristics); *Doe*, 860 F.3d at 370 ("[W]hile the proceeding may lack all the formalities found in a trial, it contains enough protections and similarities to qualify as "akin to criminal prosecutions" for purposes of *Younger* abstention.").

*Third*, the State has an important interest in eliminating gender discrimination and sexual assault in higher education, maintaining a fair disciplinary system for alleged sexual misconduct on college campuses and sanctioning students for misconduct. *See Doe*, 860 F.3d at 370 ("The state has an interest in eliminating sexual assault on its campus and establishing a fair and constitutionally permissible disciplinary system."); *see also Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883–84 (9th Cir. 2011) (recognizing "states' important interest in enforcing its employment anti-

discrimination laws through administrative proceedings") (citing *Ohio C.R. Comm'n v Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986).

As noted, the fourth requirement is in dispute. Plaintiff contends that his Title IX rights cannot be protected and assured in the state Writ Action given its limited scope. Dkt. 15 at 25–26. Thus, Plaintiff argues that the state Writ Action is limited to "compelling the performance of an act which the law specially enjoins" and can examine only "whether the respondent has proceeded without or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." *Id.* at 26 (cleaned up) (first quoting Cal. Civ. Proc. Code § 1085(a); and then quoting *id.* § 1094.5(f)). Based on that circumscribed scope of judicial review, Plaintiff argues that the state court cannot "review whether Defendant's conduct discriminates against Plaintiff on the basis of gender in violation of Title IX." *Id.*

Plaintiff's argument is unpersuasive. It is well-established that the California writ of mandamus procedure at issue affords sufficient opportunity to raise federal constitutional claims. *See, e.g.*, *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) (§ 1094.5 proceedings provided the plaintiff a "meaningful opportunity" to raise constitutional claims); *Joseph v. City of San Jose*, No. 19-CV-1294, 2020 WL 1031899, at *14 (N.D. Cal. 2020) ("Plaintiff may invoke a writ of mandate under California Civil Code § 1094.5 to challenge alleged federal constitutional violations here.").

Plaintiff has offered no authority that federal statutory claims, like claims arising under Title IX, are treated differently than federal constitutional claims in § 1094.5 proceedings. Indeed, because the Superior Court has jurisdiction to evaluate whether CSU abused its discretion -- including whether CSU "has not proceeded in the manner required by law," Cal. Civ. Proc. Code § 1094.5(b) -- Plaintiff plainly can raise Title IX as part of a defense in the § 1094.5 proceeding with respect to the inquiry whether CSU "proceeded in the manner required by law." *See, e.g.*, *S. Cal. Gas Co. v. Occupational Safety & Health Appeals Bd.*, 58 Cal. App. 4th 200, 209–10 (1997) (reversing denial of writ petition where federal law preempted state law, and therefore, state law could not be enforced against petitioner). Because "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline," Plaintiff can argue in the Writ Action, as part of an affirmative defense, that the discipline must be set aside because it violates federal law. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *cf. Hamm v. City of Rock Hill*, 379 U.S. 306, 311 (1964) (recognizing that rights created by the Civil Rights Act of 1964 can be asserted defensively in state prosecutions). Although the state court proceedings are subject to California procedural law, the Superior Court must hear defenses that arise under federal law, including Plaintiff's Title IX claim. *See McKnett v. St. Louis & S.F. Ry. Co.* 292 U.S. 230, 234 (1934) (under the Supremacy Clause, "[a] state may not discriminate against rights arising under federal laws").

Contrary to Plaintiff's arguments, it is not material that the Writ Action does not involve typical discovery and trial procedures.[2] Dkt. 15 at 20, 26. The Ninth Circuit has held that this *Younger* element is met even if a litigant's only opportunity to raise federal claims is "review by the California Supreme Court," even where such review is wholly discretionary and appellate in nature, which is analogous to the writ

---

[2] Plaintiff also asserts that damages are not available in a § 1094.5 writ action. Dkt. 15 at 24. However, the California Supreme Court has held that damages remedies are available in writ actions. *See Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 326 n.27 (2002).

proceeding at issue here. *See Clevenger v. Dresser*, 746 F. App'x 645, 646 (9th Cir. 2018) (collecting cases).

Moreover, it is not material whether Plaintiff actually raised a Title IX claim or defense in the Writ Action; *Younger* considers only whether there is an "adequate" opportunity to raise such claims, not whether Plaintiff actually presented or litigated them.[3] *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1019–20 (9th Cir. 1999). "In fact, the Supreme Court has suggested that a plaintiff's failure to raise its federal claims in the state proceedings favors *Younger* abstention." *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.")).

Plaintiff's reliance on *Western Surgical Supply Co. v. Affleck* does not support his argument. Dkt. 15 at 26 (citing 110 Cal. App. 2d 388, 393 (1952)). There, the California Court of Appeal held that "[w]hether petitioner has violated the various acts, or whether those acts are unconstitutional, are questions beyond the scope of this proceeding" because the court had already found that petitioner was not actually subjected to any enforcement actions by the respondent because the respondent had not yet actually "enforce[d] its orders or regulations against petitioner . . . ." *Western Surgical*, 110 Cal. App. 2d at 391, 393. *Western Surgical* stands for the more modest principle that a writ proceeding may not issue an advisory opinion on the "validity of the statutes involved" where they have not yet been enforced by the respondent. *Id.* Read in context, *Western Surgical* does not contradict the well-established principle that writ proceedings under California law allow litigants to raise claims or defenses arising under federal law.

At the hearing, Plaintiff raised several new arguments not addressed in his brief. None is persuasive. *First*, Plaintiff argued that, because Title IX is a federal civil rights statute, Title IX claims cannot appropriately be adjudicated in state court. This contention is without merit. State and federal courts "have concurrent jurisdiction over claims under Title IX." *Teran v. Hagopian*, No. 07-CV-1476, 2009 WL 900743, at *19 (E.D. Cal. Mar. 31, 2009). Except where Congress has expressly withdrawn jurisdiction from the state courts, *e.g.*, in the patent and copyright statutes, state courts are "presumptively competent[] to adjudicate claims arising under the laws of the United States. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).

*Second*, Plaintiff conceded at the hearing that his Title IX claims could be brought in the state writ action. Despite that, Plaintiff argued that *Younger* abstention remains inappropriate because any non-writ claims brought in the state action would be "split" from the writ claim and assigned to a different state court judge.[4] This procedural practice is immaterial for *Younger* purposes. Thus, it does not result in the denial of Plaintiff's opportunity to raise federal claims in the ongoing state proceedings.

*Third*, Plaintiff also argued that California law, not federal law, provides the substantive rule of decision in the writ proceeding. For the reasons already discussed, Plaintiff's position is without merit. *See, e.g.*,

---

[3] Plaintiff's petition in the Writ Action refers to Title IX and states that CSU is "subject to Title IX," but does not otherwise allege that CSU violated Title IX. Dkt. 14-2 at 110.

[4] Plaintiff also argued that this Court should exercise jurisdiction because, assuming the claims were severed, Plaintiff would in any event remove the case. Plaintiff does not have the right to remove a case to federal court; only defendants have that right. 28 U.S.C. § 1441(a).

*Bettis v. Oscar Mayer Foods Corp.*, 878 F.2d 192, 197 n.8 (7th Cir. 1989) ("[I]n determining the validity of the federal defense, the court, federal or state, is obliged to apply federal law.").

*Fourth*, Plaintiff argued that abstaining under *Younger* presents a "Catch-22." He contends that, because students must file a writ petition in order to exhaust state remedies before filing a Title IX action in federal court, once that action is before a federal court, *Younger* abstention will apply in light of the ongoing writ proceedings. This argument does not weigh against *Younger* abstention. In *Doe v. Regents of the Univ. of Cal.*, the Ninth Circuit held that students must "exhaust judicial remedies by filing a § 1094.5 petition" against a state university before bringing Title IX claims in federal court. 891 F.3d 1147, 1154 (2018). *Doe* has been questioned on the ground that it is in tension with the long-standing principle that exhaustion is not required for a § 1983 plaintiff. *See Jamgotchian v. Ferraro*, 93 F.4th 1150, 1160 (9th Cir. 2024) ("In seemingly imposing a judicial exhaustion requirement on a § 1983 plaintiff, *Doe* appears inconsistent with *Knick* and other authorities. *Doe* never addressed settled precedent holding that exhaustion of state judicial remedies is not a prerequisite to filing suit under § 1983. And whereas *Miller* and other precedents invoked the availability of state judicial review in explaining why it was fundamentally fair to accord preclusive effect to state agency decisions under *Utah Construction*, *Doe* appears to go a step further, faulting a § 1983 plaintiff for his failure to exhaust state court review processes. Jamgotchian fairly argues that *Doe*'s reasoning is in substantial tension with *Knick* and other cases rejecting exhaustion requirements for § 1983 suits.").

Even under *Doe*, however, Plaintiff does not face a "Catch-22" because a federal forum remains potentially available to him *after* the conclusion of the state writ proceedings. *See, e.g.*, *Doe v. Cal. Inst. of Tech.*, No. 18-CV-9178, 2019 WL 4238888, at *3 (C.D. Cal. Apr. 30, 2019) ("The Ninth Circuit in *Doe* appeared to suggest that a plaintiff merely needs to 'file' a petition, rather than obtain a final judgment on the petition, to satisfy the exhaustion requirements."); *Boermeester v. Univ. of S. Cal.*, No. 19-CV-2137, 2025 WL 1095359, at *5 (C.D. Cal. Mar. 10, 2025) ("Defendants cite no case, and the court has found none, in which a student who pursued a mandamus challenge and failed to overturn a university decision in that proceeding was barred from challenging the decision in an action for civil damages.").[5]

(ii) <u>Practical Effects of This Action on Ongoing State Proceedings</u>

The only remaining issue is whether this federal action would have the "practical effect" of enjoining or interfering with the ongoing state proceedings. *ReadyLink Healthcare*, 754 F.3d at 759. Defendant contends that the injunctive relief Plaintiff seeks, *i.e.,* barring Defendant from enforcing the disciplinary sanction and requiring Defendant to issue Plaintiff's undergraduate degree, would have the "practical effect" of enjoining the ongoing Writ Action. Dkt. 14-1 at 20. Plaintiff responds that he has not requested

[5] In an unpublished opinion, the Ninth Circuit has suggested that a damages claim may not be pursued unless a plaintiff successfully sets aside the university's action in the state writ proceeding. *See Dixon v. Univ. of S. Cal.*, No. 23-55079, 2024 WL 866028, *1 (9th Cir. 2024) ("Dixon was thus required to 'first succeed in overturning the quasi-judicial action' – his Title IX proceeding at USC – via a petition for writ of administrative mandate before he could pursue his damages claims against USC."). If this statement is accepted, Plaintiff's "Catch-22" argument has more force because Plaintiff would "be forced to exhaust a state court process the result of which could then preclude him from bringing a" federal lawsuit. *Jamgotchian*, 93 F.4th at 1157–58 (discussing a similar issue in the context of § 1983 litigation). However, *Dixon* is not binding. *See* 9th Cir. R. 36-3(a). Instead, under *Doe*, there is no requirement that Plaintiff prevail in the Writ Action in order to exhaust state remedies before pursuing an action in federal court.

any injunctive relief directed at the state court proceeding itself and this Court could "issue injunctive relief that has no impact on the relief sought through the state court writ proceeding." Dkt. 15 at 23–24.

Plaintiff's arguments are again unpersuasive. Plaintiff's federal action would practically enjoin ongoing state proceedings. Permitting it to proceed would conflict with *Younger*.

The remedies sought in a federal court need not "directly interfere" with an ongoing state proceeding for *Younger* to apply. *Gilbertson*, 381 F.3d at 976–78. Instead, where state proceedings are not "free to continue" independently of the federal suit and its outcome, abstention is appropriate. *See AmerisourceBergen v. Roden*, 495 F.3d 1143, 1152 (9th Cir. 2007). If the injunction Plaintiff seeks were granted, state proceedings would not be "free to continue" because Defendant would be required to withdraw the sanctions it imposed and is now defending in the Writ Action; Defendant "cannot continue to enforce" a sanction violative of federal law, which is the central allegation in this action, Dkt. 1 ¶ 107 ("Defendant unlawfully used gender [a]s a motivating factor in" the Title IX proceedings). *See Citizens for Free Speech, LLC v. Berman*, No. 18-CV-10756, 2019 WL 4143306, at *7 (C.D. Cal. June 12, 2019) ("[T]he Ninth Circuit has found that *Younger* abstention applies in circumstances where the relief sought by a plaintiff is inextricably intertwined with the state proceeding. Plaintiff's request for a declaration that the [ordinance] is unconstitutional . . . would have the effect of bringing the Administrative Matter to an end. After all, California cannot continue to enforce a law that has been found to violate the Constitution." (citation omitted)). At the very least, the federal action "could substantially delay," if not moot entirely, the Writ Action, which is sufficient to show the kind of interference that *Younger* aims to eliminate. *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020).

Moreover, conclusions of law as to Plaintiff's Title IX claim in this proceeding would have preclusive and potentially dispositive effect in a state court, which "has the same practical impact as injunctive relief" against the Writ Action. *Gilbertson*, 381 F.3d at 975 ("[F]ederal courts should also refrain from exercising jurisdiction in actions for declaratory relief because declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment."). For example, if Plaintiff prevails on his Title IX claim on the ground that CSU violated its own policies in a discriminatory manner, Dkt. 1 ¶¶ 107–108, that would collaterally estop the state court from affirming the discipline imposed by CSU in the Writ Action. Enjoining the enforcement of the same sanction that is at issue in the state proceedings would thereby "enjoin directly the state action." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1048 (9th Cir. 2019) (a request to enjoin the same sanction whose validity is being litigated in state court constitutes interference with ongoing state proceeding under *Younger*); *see also Gilbertson*, 381 F.3d at 980 (federal court assuming jurisdiction "would frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question of federal constitutional law").

For these reasons, other district courts have concluded that *Younger* applies to circumstances like the ones presented here, where a plaintiff commences a federal action in an effort to make a collateral attack on administrative disciplinary sanctions subject to ongoing review in a state writ proceeding. *See, e.g.*, *DeJesus v. County of Mariposa*, No. 21-CV-520, 2022 WL 396838, at *6 (E.D. Cal. Feb. 9, 2022); *Franklin v. City of Kingsburg*, No. 18-CV-824, 2020 WL 2793061, at *5 (E.D. Cal. May 29, 2020); *Dowden v. City of Sacramento*, 40 F. Supp. 2d 1146, 1150–51 (E.D. Cal. 1999). In *DeJesus,* a public employee plaintiff was terminated based on alleged sexual harassment. *DeJesus*, 2022 WL 396838, at

*2. After completing the administrative disciplinary process, the employee filed a writ action in state court and a Title VII damages-only action in federal court, challenging his termination. *Id.* The federal action did not seek declaratory or injunctive relief, and the legal theories underlying the state and federal proceedings were not identical. *Id.* at *7. However, the district court concluded that *Younger* applied because, if the "plaintiff prevailed on his claims for employment discrimination in federal court, '[t]his would have the practical effect of directly undermining the decision of the [public-entity employer] to dismiss him.' " *Id.* at *6 (quoting *Franklin*, 2020 WL 2793061, at *5).

This action presents similar issues. Plaintiff seeks an injunction that would "halt" ongoing state proceedings by compelling CSU to restore him to good standing and issue his diploma. *See Dowden*, 40 F. Supp. 2d at 1150 ("As a practical matter, the injunction sought by Dowden would halt the proceedings before the Board, since it would compel the Department to give him the reinstatement he seeks in his administrative appeal."). Courts have expressly rejected Plaintiff's argument that *Younger* does not apply where, as a formal matter, the requested injunction is not directed at the state court itself. *Compare* Dkt. 15 at 23 (Plaintiff arguing that *Younger* does not apply because Plaintiff "omits any request for this Court to enjoin the state court writ proceedings that Plaintiff himself commenced") *with Dowden*, 40 F. Supp. 2d at 1150 ("Dowden argues that *Younger* abstention is improper here because his request for injunctive relief is not directed at the Civil Service Board itself. . . . The distinction drawn by Dowden between this request for injunctive relief [requiring reinstatement of employment] and a request that the state proceedings be enjoined is not persuasive.").

It is also immaterial that Plaintiff, rather than CSU, brought the Writ Action in the Superior Court. Dkt. 15 at 23. The Ninth Circuit has affirmed the application of *Younger* to a mandamus action in state court brought by a private party challenging a state action. *San Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998) (affirming that *Younger* applied where plaintiff's "mandamus action was pending at the time this suit was filed").

Finally, Plaintiff's attempt to distinguish *Herrera* is unpersuasive. Dkt. 15 at 24 (citing *Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir. 2019)). There, the City initiated administrative and judicial proceedings against a motel for alleged violations of the municipal code and state safety and building codes. *Herrera*, 918 F.3d at 1041. That included a pre-judicial administrative process -- obtaining and executing a civil inspection warrant, the issuance of a notice and order to abate, and the interim closure of the motel -- followed by the filing of a formal nuisance complaint by the City in the state court. *Id.* at 1041–42. "Almost simultaneously" with that formal nuisance action, the plaintiff motel owners brought a § 1983 suit in federal court. *Id.* The Ninth Circuit rejected the plaintiff's contention that, because the "issues raised in the federal action are 'wholly distinct from the state court question,' " the federal action did not interfere with the ongoing state proceedings. *Id.* at 1047–48. Instead, it determined that the federal action would "enjoin directly the state action" because plaintiffs sought to "enjoin the City from closing the motel and evicting the Herreras" -- which was identical to the sanction pursued by the City in the pre-judicial administrative process and formal nuisance action in state court. *Id.* at 1048. That analysis applies here, because Plaintiff seeks to enjoin enforcement of the sanction that CSU imposed through the administrative process and is now defending in the Writ Action.

For the foregoing reasons, *Younger* abstention is appropriate. Therefore, Plaintiff's claims for injunctive relief are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims for damages are **STAYED** pending resolution of the Writ Action. *See Gilbertson*, 381 F.3d at 984.

2. *Colorado River* Abstention

Defendant also contends that a stay under *Colorado River* is warranted here in light of parallel state proceedings. Dkt. 14-1 at 15–17. Although this issue need not be reached, it is addressed for completeness and to advance party and judicial efficiency.

(a) Legal Standards

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress, even where there are parallel state proceedings. *Id.* at 817. For that reason, there is a "strong presumption against federal abstention." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017).

When "exceptional circumstances" are present, *Colo. River*, 424 U.S. at 813, federal courts are permitted to "refrain from exercising jurisdiction" based on "parallel state proceedings" under the *Colorado River* abstention doctrine. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1185 (9th Cir. 2024). The "task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983).

The Ninth Circuit has "listed eight factors to be considered in determining whether" abstention under *Colorado River* is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (quoting *R.R. St. & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978–979 (9th Cir. 2011)).

Not all of these factors necessarily apply in every action, and some are more important than others. *See Seneca Ins.*, 862 F.3d at 842 (citing *Moses Cone*, 460 U.S. at 16); *Moses Cone*, 4680 U.S. at 28. Rather, these factors are applied in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* (quoting *Moses Cone*, 460 U.S. at 21). "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

(b) Application

When the "federal and state proceedings are not sufficiently *parallel*, a *Colorado River* stay may not issue." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 838 (9th Cir. 2023) (emphasis added). The

Supreme Court has taught that the application of *Colorado River* is a "serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution between the parties." *Moses Cone*, 460 U.S. at 28 (emphasis added). "[T]he existence of a substantial doubt as to whether the [non-federal] proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). The parallelism factor is accordingly a "threshold requirement" for the application of *Colorado River*. *Ernest Bock*, 76 F.3d at 838.

If state court proceedings will "fully resolve the federal case *only if* the state court rules in one of two ways," parallelism is not satisfied because there remains a "substantial doubt" as to whether the state proceedings will *completely* resolve the federal action. *Ernest Bock*, 76 F.4th at 838–42. That is the issue presented in this action. Thus, the Writ Action can "result only in binary outcomes, one of which would require federal litigation" following resolution of the state proceedings. *Id.* at 840 n.17.

The first possible outcome is that CSU prevails in the in the Writ Action. That would make further federal litigation unnecessary because the disciplinary sanction will have been upheld and the Title IX proceedings deemed appropriate. These are the same claims advanced in this action*, i.e.,* they are predicated on the allegation that CSU violated its own policies and Title IX during the proceedings, making them fundamentally unfair and discriminatory. *See, e.g.*, *Boermeester*, 2025 WL 1095359, at *6–7 (plaintiff failed to state a claim under Title IX in light of adverse findings in underlying state court writ proceeding).[6]

The second possible outcome, which CSU does not address, is that Plaintiff may prevail in the Writ Action. This outcome would warrant further federal litigation. Thus, if the Title IX proceedings are invalidated and the sanctions against Plaintiff are set aside, it would not dispose of the claims in this action. Rather, Plaintiff's Title IX and state-law causes of action would have to be adjudicated here because they were not asserted in the state proceeding. *Ernest Bock*, 76 F.4th at 841 ("When one possible outcome of parallel state court proceedings is continued federal litigation, we find a "substantial doubt" that the state court action will provide a "complete and prompt resolution of the issues," because the federal court may well have something "further to do." (quoting *Moses Cone*, 460 U.S. at 28)).

Accordingly, because the state and federal proceedings are not sufficiently parallel under *Ernest Bock*, the "threshold requirement for a *Colorado River* stay" is not satisfied. *Ernest* Bock, 76 F.4th at 838. Analysis of the remaining factors is not necessary to determine that *Colorado River* abstention is not appropriate under these circumstances.

---

[6] Plaintiff is correct that *Boermeester* addressed, in part, the *Rooker-Feldman* doctrine, not *Colorado River*. Dkt. 15 at 22. However, *Boermeester* separately held that Plaintiff's Title IX and related claims were subject to issue preclusion based on determinations made in the course of the state writ proceedings and subsequent appeals. *Boermeester*, 2025 WL 1095359, at *6–7. That supports the conclusion that the issues addressed in the state court proceedings at issue here, if decided adversely to Plaintiff, will have preclusive effect on the claims asserted in this action.

3. Failure to State a Claim

The parties also dispute whether the Complaint plausibly states a claim for relief. *Compare* Dkt. 14 at 20–33 *with* Dkt. 15 at 26–33. Because abstention is required under *Younger*, it is not appropriate to reach these arguments. *See Goings v. Sumner Cnty. Dist. Atty's Off.*, 571 F. App'x 634, 637 (10th Cir. 2014) (it was "improper for the district court to rule on the merits of [a plaintiff's] Complaint under Rule 12(b)(6), where the conditions were satisfied for application of *Younger* abstention"); *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001) ("[I]n addressing Younger abstention issues, district courts must exercise jurisdiction except when specific legal standards are met, and may not exercise jurisdiction when those standards are met; there is no discretion vested in the district courts to do otherwise."), *overruled in part on other grounds by Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004); *Fedex Ground Package Sys., Inc. v. Ingenito*, 86 F. Supp. 3d 1121, 1125 n.4 (E.D. Cal. 2015) ("Because this Court finds that abstention is appropriate under *Younger*, the Court declines to address Defendants' Rule 12(b)(1) and Rule 12(b)(6) arguments.").

## IV. Conclusion

For the foregoing reasons, the doctrine of *Younger* requires abstention from the exercise of federal jurisdiction over this dispute. Plaintiff's claims for injunctive relief are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims for damages are **STAYED** pending resolution of the state proceedings.

The parties shall file a joint report as to the status of the state proceedings on the earlier of every 90 days, or within 14 days of any material development in the state proceedings, with the first 90-day report due on or before March 30, 2026.

**IT IS SO ORDERED.**

________ : ________

Initials of Preparer LC3